# EXHIBIT 1

<table>
<tr><td>

**DISTRICT COURT,**
**CITY AND COUNTY OF DENVER, COLORADO**
Court Address:
1437 Bannock Street
City and County Building
Denver, CO 80202
(720) 865-8301

</td><td>

EFILED Document
CO Denver County District Court 2nd JD
Filing Date: Sep 5 2008 5:11PM MDT
Filing ID: 21387838
Review Clerk: Sean McGowan

</td></tr>
</table>

**Plaintiff:**
Day Imaging, Inc. d/b/a Legacy Imaging, Inc.,

v.

**Defendant:**
Color Labs Enterprises, LLC and Color Laboratories, LLC.

▲ **COURT USE ONLY** ▲

Case Number:

Div.:          Ctrm.:

| Attorney or Party Without Attorney: | |
|---|---|
| Name: | Timothy M. Rastello |
| Address: | HOLLAND & HART LLP |
| | One Boulder Plaza |
| | 1800 Broadway, Suite 300 |
| | Boulder, CO 80302 |
| Telephone: | (303) 473-2727 |
| Facsimile: | (303) 975-5358 |
| E-mail: | trastello@hollandhart.com |
| Atty.Reg.#: | 11511 |

**COMPLAINT AND JURY DEMAND**

Plaintiff, Day Imaging, Inc. d/b/a Legacy Imaging, Inc. ("Legacy"), by and through its counsel, Timothy M. Rastello of Holland & Hart LLP, pursuant to Rule 15(a), Colorado Rules of Civil Procedure, hereby states its Complaint and Jury Demand against Defendants Color Labs Enterprises, LLC and Color Laboratories, LLC.

## GENERAL ALLEGATIONS

1.     Plaintiff Day Imaging, Inc. d/b/a Legacy Imaging, Inc. ("Legacy") is a Colorado corporation doing business in Colorado and having its principal place of business at 621 17th Street, Suite 1245, Denver, Colorado.

2.     Defendants Color Labs Enterprises, LLC and Color Laboratories, LLC ("Color Labs") are believed to be California limited liability companies with their principal place of business in Canoga Park, California.

3.    On or about December 1, 2006, Legacy and Color Labs entered an agreement ("Agreement") to co-manufacture ink jet cartridges compatible with two Pitney Bowes Parts identified as 797-0 and 793-5.  (See Exhibit 1)  The Legacy/Color Labs compatible products were to be identified as K700 and DM1000.

4.    Under the Agreement, Legacy was required to design and develop the K700 and DM1000 parts, and Color Labs was to pay for all of the design and manufacturing costs associated with such design and development.

5.    In connection with the Agreement, the parties also executed a Non-Circumvention, Non-Compete, and Nondisclosure Agreement ("Non-Compete") expressly stating that the terms applied to the principal Agreement.  (See Exhibit 2)  Indeed, the Non-Compete provides that upon written request of Color Labs, Legacy will deliver to Color Labs "all designs, business processes, and manufacturing details of Color Laboratories" assuming, of course, that Color Labs became the owner of such property as contemplated under the Agreement.

6.    Legacy fulfilled its obligation under the Agreement by designing and developing the K700 and DM1000 parts.

7.    Color Labs did not fulfill its obligations under the Agreement by, *inter alia*, failing to pay Legacy for the design and manufacturing costs associated with such design and development.

8.    Consequently, on February 21, 2007, Legacy provided written notice of Color Labs' breaches, and Legacy terminated the Agreement.  (See Exhibit 3)

9.    Color Labs did not dispute the assertions that it had breached the Agreement nor the propriety of the termination of the Agreement.  Nor did Color Labs assert at the time that the Non-Compete somehow prevented Legacy from manufacturing and selling the products it had designed and developed to purchasers other than Color Labs.

10.    Thereafter, between March 2007 and August 2008, Color Labs purchased from Legacy products, including the K700 and DM1000 parts designed and manufactured by Legacy. Color Labs was fully aware that Legacy was selling the same products in the marketplace to other purchasers.

11.    During the months from November 2007 through August 2008 Color Labs ordered and Legacy shipped various products from Legacy.  Legacy duly shipped the products and invoiced Color Labs for the agreed upon sums totaling $71,404.61.

## FIRST CLAIM FOR RELIEF

12.    Legacy incorporates the paragraphs above as if fully set forth herein.

-2-

13.     Color Labs has refused to pay for the products ordered from Legacy and shipped to Color labs by Legacy and has indicated it will not pay the sums owed.

14.     As a result of Color Labs' actions, it is liable to Legacy for $71,404.61, plus pre-judgment and post-judgment interest, and attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

15.     Legacy incorporates the paragraphs above as if fully set forth herein.

16.     Color Labs recently has asserted that it has enforceable rights under the Non-Compete and that Legacy may not sell the K700 and DM1000 parts, which Legacy designed, developed, and manufactured, to anyone other than Color Labs.

17.     Pursuant to Rule 57, Colorado Rule of Civil Procedure, and Colo.Rev.Stat. §§ 13-15-101 to 115, any person whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations.

18.     The purpose of Rule 57 is to "settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and is to be liberally construed and administered."

19.     A present controversy exists among the parties regarding the validity and enforceability of the Non-Compete.  This controversy has created uncertainty and insecurity with respect to rights, status, and other legal relations between the parties.

20.     Legacy is entitled to a declaration of their rights involving the matters set forth above.

21.     Legacy seeks a declaration that the Non-Compete is void, invalid, and or unenforceable, and that Legacy is not prohibited from selling the K700 and DM1000 parts to persons other than Color Labs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in their favor and against Defendants and award Plaintiff all damages and all costs of this action, including attorneys' fees and any expert fees, pre-judgment and post-judgment interest, and such other and further relief as the Court deems just and proper.

-3-

## JURY DEMAND

Pursuant to Colo.R.Civ.P. 38(b), Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated September 5, 2008

Respectfully submitted,

*s/ Timothy M. Rastello*
Timothy M. Rastello, #11511
HOLLAND & HART LLP
**ATTORNEYS FOR PLAINTIFFS**

Address of Plaintiff, Legacy Imaging, Inc.
621 17th Street, Suite 1245
Denver, CO  80293

3919468_1.DOC

-4-

EFILED Document
CO Denver County District Court 2nd JD
Filing Date: Sep 5 2008 5:11PM MDT
Filing ID: 21387838
Review Clerk: Sean McGowan

# EXHIBIT 1

## Letter of Agreement – Design and Manufacturing

This Letter of Agreement (the "Agreement") is dated as of this 1st day of December, 2006 by and between Day Imaging, Inc., doing business under the trade name Legacy Imaging, Inc. with an address at 621 17th Street, Suite 1245, Denver Colorado 80293 (hereinafter "Legacy" or "Manufacturer") and Color Laboratories LLC, a California limited liability company, having its corporate offices at 615 Allen Avenue, Glendale California 91201 (hereinafter "Color Labs" or "Company").

### 1.   PRODUCTS

Legacy will manufacture two (2) Pitney Bowes compatible cartridges ("Mailroom Product") per this agreement with Color Laboratories

The Mailroom Product will be identified as
- K700 (Pitney Bowes Part Number 797-0)
- DM100i (Pitney Bowes Part Number 793-5)

### 2.   THE RELATIONSHIP

This Letter of Agreement describes a work for hire relationship between Color Labs and Legacy.

Legacy will manufacture Mailroom Products exclusively for Color Laboratories, and may not manufacture postage meter compatible products for any other customer throughout the term of the agreement.

### 3.   SALE AND DISTRIBUTION OF MAILROOM PRODUCT

Color Laboratories will have the exclusive right to sell and distribute the Mailroom Product throughout the world.

### 4.   COST OF DEVELOPMENT AND FINISHED GOODS

Legacy will define all costs associated with the design and of manufacturing of the Mailroom Product and commits to make every effort to minimally markup the manufacturing costs which will be ultimately be passed on to Color Labs.

Legacy will provide Color Laboratories with manufacturing invoices and supplier quotes related to the manufacture of the Mailroom Product.

Initial cost estimates are outline in Attachments A and B. These initial cost estimates may be revised as supplier pricing become definite.

Color Labs will pay for all design and manufacturing costs of the Mailroom Product as invoiced by Legacy, with the exception of the cost of the K700 base which will be paid for in it's entirety by Legacy.

Color Labs will pay for each phase of the project in advance (Beginning with a $10,000 payment to begin project). As the development progresses and the initial funds are consumed, Color Laboratories will make additional payments in advance of each phase. The sum of $10,000 will be held back and paid upon completion of the project. Completion of the project will be defined as the delivery of the first finished good.

### 5.   COST OF FINISHED GOODS

Legacy will define the cost of the finished goods of the Mailroom Product and will continue to produce the Mailroom Product at or below the stated costs for the duration of the contract.

### EXHIBIT 1

Color Laboratories will provide all ink to be used in the manufacturing of the Mailroom Product

## 6.   PROJECT MANAGEMENT

Legacy will be responsible for all project management associated with the manufacturing and production of the Mailroom Product.

Legacy will work with Color Laboratories to define a project schedule at the commencement of development and will make every effort to adhere to the published schedule.

Legacy commits to
- Make their best effort to adhere to stated schedule
- Minimally markup manufacturing costs
- Produce a high quality and fully functional product

## 7.   QUALITY CONSIDERATIONS

If it is determined that quality issues exist with either the Mailroom Product or inkjet products, Legacy will have a 30 day period to cure such quality issues. If after 30 days, such quality issues persist, Color Laboratories will be under no obligation to continue to purchase the affected products from Legacy.

In the event that Legacy does not cure quality issues of the Mailroom Product, Legacy will provide Color labs with all molds and designs necessary to manufacture the mailroom Products with another supplier.

## 8.   ADDITIONAL CONSIDERATIONS

In exchange for manufacturing the Mailroom Product, Color Laboratories commits to:
- Purchasing a minimum of 50% of its compatible and remanufactured inkjet cartridges from Legacy throughout the term of the contract as long as the inkjet cartridges adhere to commercially acceptable quality levels.
- Throughout the term of the agreement, Legacy's pricing to Color Laboratories must remain competitive with suppliers of like product.
- Both parties agree the goal of our relationship is to allow Legacy to become the primary supplier of inkjet cartridges to Color Laboratories (with the understanding that Color Laboratories will always maintain relationships with multiple suppliers in the event Legacy cartridges are not yet available or are out of stock).
- Color Labs will commit to the purchase of 40,000 units of each Mailroom Product SKU per year for the duration of the contract

## 9.   INTELLECTUAL PROPERTY

Color Labs will pay for all Intellectual Property research and will own 100% of the intellectual property (with the exception of the base for the K700 cartridge) related to the Mailroom Product.

All ownership of the Mailroom Product will remain with Color Laboratories in perpetuity. Ownership includes Intellectual Property, Designs and Physical Molds.

Color Laboratories will share the findings of its attorneys with Legacy in order to provide design-around advice and direction.

Color Laboratories will make available to Legacy its attorneys via conference call in order to provide clarification in regards to their findings

Title to the intellectual property rights will always remain in Color Labs.

2

12/01/2006   13:15   8182658805              CHALLENGER ONE                          PAGE   02

DEC-01-2006   13:22        LEGACY IMAGING                              303 328 1234    P.04

Legacy will never acquire any ownership rights in the Intellectual Property Rights. Color Labs will solely own and have exclusive worldwide right, title, and interest in and to all United States and foreign trademarks, copyrights, service marks, trade secrets, patents, and all other intellectual property rights in any way regarding the Intellectual Property Rights and the Manufactured Product Designs, and to all derivative works and/or modifications thereto.

Legacy will not challenge the validity or enforceability of any of the Intellectual Property Rights or the Manufactured Product Designs, or any part thereof at any time.

In addition, Legacy will not directly or indirectly apply for or attempt to register for itself or others any of the Patents, whether they are utility patents or design patents (without limitation, all molds, schematics, drawings, diagrams, colors, shapes, and manufacturing process), or any of the trademarks, service marks, copyrights or similar protection in any country or area.

In the event Company wishes to obtain additional protection for the Patents and Trademarks anywhere in the world, Legacy will fully cooperate with Color Labs by providing such documents and information and performing such acts as are reasonably requested by Color Labs.

Any new technology developed for use in the products will become the intellectual property of Color Laboratories unless mutually agreed in writing.

## 10.   FUTURE PRODUCTS

Future Mailroom Products may be added to the initial agreement in the form of an Attachment outlining costs and Volume commitments.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date shown.

COLOR LABORATORIES, LLC                           DAY IMAGING, INC., doing business as LEGACY IMAGING, INC.

By: _____               By: _____

Print Name: __Bill Zilla__                 Print Name: __Charles B. Duke__

Title: __V.P. Product Management__         Title: __President__


3

TOTAL P.04

**ATTACHEMENT A**

COST ESTIMATE 793-3

| Cost Evaluation | Cost for Initial Evaluation: |
|---|---|
| | Cost for OEM Baseline:  24 pieces/$50.00 each = $1,200.00 |
| | Cost for DVT Eng. Time: $7,500.00 to $15,000.00 |
| | Cost for Molding: Base Tool: $30,000.00 US Built      $25,000.00 Asian built |
| | Lid Tool : $10,000.00 US Built       $7,500.00 Asian Built |
| | Reservoir : $5,000.00  US Built |
| | Nozzle : $2,000.00  US Built |
| | Cost for Chip: $4,000.00  to $6,000.00 |
| | Cost of Core:  N/A |
| | Patent Analysis: $3,500.00 to $8,000.00  (Ink -- major patent issue) |
| | Pitney Bowes vs. Print point |
| | Total Initial Cost: |
| | R/M Cost of Finished Good: Cost of ink is major variable w/o ink estimate: $2.10 |
| | ROI: |

4

**ATTACHEMENT B**

COST ESTIMATE 797-0

| | |
|---|---|
| Cost Evaluation | Cost for Initial Evaluation: |
| | Cost for OEM Baseline: 24 pieces/$30.00 each = $720.00 |
| | Cost for DVT Eng. Time: $7,500.00 to $15,000.00 |
| | Cost for Molding: Base Tool: $30,000.00 US Built    $23,000.00 Asian built |
| | Lid Tool : $10,000.00 US Built    $7,500.00 Asian Built |
| | Reservoir : $5,000.00  US Built |
| | Cost for Chip: $4,000.00  to $6,000.00 |
| | Cost of Core:  N/A |
| | Patent Analysis: $3,500.00 to $6,000.00  (Ink – major patent issue) Pitney Bowes vs. Pint point Total Initial Cost: |
| | R/M Cost of Finished Good: Cost of ink is major variable w/o ink estimate: $1.60 |
| | ROI: |

5

EFILED Document
CO Denver County District Court 2nd JD
Filing Date: Sep 5 2008 5:11PM MDT
Filing ID: 21387838
Review Clerk: Sean McGowan

# EXHIBIT 2

10-05-2006 18:32    LEGACY IMAGING  3115531313501S                                    PAGE1

## NON-CIRCUMVENTION, NON-COMPETE, AND NONDISCLOSURE AGREEMENT
### BETWEEN COLOR LABORATORIES, LLC
### AND
### LEGACY IMAGING

THIS NON-CIRCUMVENTION, NON-COMPETE, AND NON-DISCLOSURE AGREEMENT ("Agreement") is dated as of September 25, 2006, (the "Effective Date"), by and between COLOR LABORATORIES, LLC a California limited liability company with its principal place of business located at 615 Allen Avenue Glendale CA 91201 (hereafter "Color Laboratories"); and LEGACY IMAGING (hereafter "Legacy"), with its principal place of business located at _____ (hereafter the "Parties"). This Agreement shall obligate the undersigned parties and their partners, associates, employers, affiliates, subsidiaries, parents, company directors, representatives, employees, successors, clients, and assigns, hereinafter referred to as (the "Parties", jointly, severally, mutually and reciprocally for the terms and conditions expressly stated and agreed to below. The terms and conditions of this Agreement apply to, but are not limited to, the following, the exchange of information whether written or oral, involving copyrights, patents, trademarks, designs, customers, manufacturers, distribution, competition, pricing, marketing information, financial information, business plans, business know-how, personal or corporate names, and the deal points agreed to by the Parties for the purpose of the co-manufacturing agreement. The Parties are associated with each and would not enter into each in association or any other relationship with each other unless both Parties enter into this Agreement.

NOW, THEREFORE, IT IS AGREED:

1. Non-circumvention. Legacy agrees that as long as the Parties are associated with each other, and for a period of five (5) years after execution of this Agreement, Legacy, intending to be legally bound, hereby irrevocably agrees and guarantees that it shall not, directly or indirectly interfere with, circumvent or attempt to circumvent, avoid, by-pass, or obviate Color Laboratories' interest, or the interest or relationship between the "Parties" with sellers, buyers, brokers, dealers, customers, distributors, competitors, financial institutions, technology owners, designers, developers, or manufacturers to change, increase, avoid directly or indirectly, to avoid payment or establishment or to be established fees, if applicable, or continuance of a pre-established relationship or otherwise in a non-connected relationship with manufacturers or technology owners with intermediaries, entrepreneurs, legal counsel, or in these buy/sell relationships, or transactional relationships that by-pass Color Laboratories with any corporation, producer, technology owner, partnership, or individual revealed or introduced by Color Laboratories in connection with any on-going or future "transaction" or "payment", without the initial written consent of Color Laboratories, which may be withheld for any reason at any time.

2. Non-disclosure. Legacy agrees that as long as the Parties are associated with each other, and for a period of five (5) years after the execution of this Agreement, neither Party shall disclose, or otherwise reveal to any third party, or make use of in any manner, either directly or indirectly, any confidential information provided by but other, particularly that concerning any of each other's designs, ideas, formulas, drawings, customers, competitors, discovered during the term of this Agreement nor any of the manufacturers who, during the term of this Agreement, supply products to or for each other for resale, nor such customers' service manufacturers' terms, addresses or business needs and/or any other confidential information, advised to the other as being disclosed or unprivileged, or reasonably assumed to be confidential, without the specific written consent of the other party. Further, the Parties agree not to disclose or make use of in any manner any of the other Party's secret or confidential information, namely but not limited to, any training or business methods or techniques, whether directly or indirectly, and whether for the Party's own benefit or for the benefit of other parties presently engaged in or who may in the future engage in the same business as the other Party, in whole or in part.

3. Non-solicitation. Legacy agrees that as long as the Parties are associated with each other, after for five (5) years from the execution of this Agreement, Legacy shall not solicit for any purpose any of Color

1

# EXHIBIT 2

### BEST COPY AVAILABLE



Legacy Imaging, Inc
621 17th Street
Suite 1245
Denver, CO  80293
(303) 295-3600
(303) 308-1234 fax
www.legacyimaging.com

February 21, 2007

Color Laboratories, Inc.
615 Allen Avenue
Glendale, CA  91201

Gentlemen:

As you are aware we are having problems with your noncompliance with the terms of the
Letter of Agreement dated December 1, 2006 ("Agreement") regarding our business
relationship. This letter constitutes notice that you have breached the Agreement in the
following respects:

1) You have failed to purchase a minimum of 50% of your compatible and
   remanufactured inkjet during the past several months;
2) Your open account for recent purchases remains overdue;
3) Your credit rating is unsatisfactory to permit further purchases of products
   except upon c.o.d terms; and
4) Your $10,000 advance payment for our development funding costs has not
   been received.

Both companies entered into the Agreement in good faith, but the above circumstances
have prevented us from proceeding any further at this time. Although we must now
terminate the Agreement, we wish to do so on a cordial basis without further financial
obligation of Color Laboratories and in a manner which preserves the valuable working
relationship between us. Therefore, we propose that both companies promptly execute a
termination agreement which waives any financial penalties. Following that event we would
still consider a continuing, less formal relationship with Color Laboratories on a more
flexible basis which would allow you to purchase and distribute our products in a manner
which will continue to be mutually beneficial.

Please give this matter your prompt attention.

Sincerely,

LEGACY IMAGING, INC.

By
Charles Duke
President

**EXHIBIT 3**

EFILED Document
CO Denver County District Court 2nd JD
Filing Date: Sep 5 2008 5:11PM MDT
Filing ID: 21387838
Review Clerk: Sean McGowan

# EXHIBIT 3

Laboratories' customers or manufacturers, (a partial list is described in Paragraph 2 above) whose identity or address have been disclosed to Legacy or solicit for employment any of Color Laboratories' employees, whether such employees are managerial, administrative or sales employees.

4.  **Reasonable Restrictions and Remedy.**  The Parties agree that the foregoing restrictions in Paragraph 1, above, are reasonable and necessary for the proper protection of the business and interests of each other and will not deprive either Party of the means or opportunity for suitably supporting and maintaining its business, either now or for the duration of the effectiveness of this agreement.  In the event of actual, contemplated or threatened breach of this Agreement by Legacy, Color Laboratories will suffer damages for which monetary compensation will not suffice and, accordingly, Color Laboratories shall be entitled to an injunction, without bond, restraining Legacy from continuous or anticipated commission of such breach together with all other remedies of Color Laboratories at law and in equity.  The obligations of Legacy under this Agreement shall be severable and if any obligation is held invalid, Legacy's obligations shall be deemed reduced to the extent necessary to cure such invalidity.

5.  **No oral Agreements, No Waiver.**  There are no oral agreements between the Parties with respect to confidentiality.  This Agreement may not be amended or modified unless in writing and signed by both parties hereto.  No waiver by any Party to this Agreement of any breach or default of any of the terms or provisions hereof shall be binding upon such Party, unless the same shall be in writing and signed by or on behalf of such Party.

6.  **Binding Effect.**  This Agreement shall be binding upon the representatives, officers, employees, agents, successors and assigns of each of the parties hereto.

7.  **Attorneys' Fees.**  If either Party brings an action to enforce the terms hereof or defines rights hereunder, the prevailing Party in any such action, including any arbitration or mediation action, trial or appeal, shall be entitled to reasonable attorneys' fees to be paid by the losing Party as fixed by the court.

8.  **Property of the Party.**  Upon written request by Color Laboratories, Legacy shall immediately deliver to Color Laboratories all designs, business processes and manufacturing details of Color Laboratories and shall remove from its records and destroy the names and all other information pertaining to the Color Laboratories designs, business processes and manufacturing details for, but not limited to the following products, the DM100 (755-5) and K700 (799-0); excluding Legacy's ownership of the intellectual property of the ink tank base of the K700 (797-0) cartridge.

9.  **Validity.**  This Agreement shall be valid for a period of five years (5) years from the execution date of this Agreement.  In the event of circumvention, either directly or indirectly, the circumvented party shall be entitled to, among other remedies, a legal monetary penalty and all legal expenses in the recovery of funds.  This Agreement shall be binding on the Parties, hereunder signed, their successors, heirs, and assigns.

In witness whereof, the Parties have executed this Agreement to be effective as of the Effective Date above.

COLOR LABORATORIES, LLC.                    LEGACY IMAGING

Signed: _Bill Zell_          Signed: _Charles R. Duke_

Name: _Bill Zell_              Name: _Charles R. Duke_

Title: _V.P. Prod. Mgmt_       Title: _President_

Rev. 09-P5-2007

2